UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANDRA DESTEFANO,

              Plaintiff,         **6:17-cv-06651(MAT)**
  -vs-                            **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

              Defendant.
_____

**INTRODUCTION**

Sandra Destefano ("Plaintiff"), represented by counsel, brings this action under Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her application for supplemental security income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's decision is affirmed. Accordingly, Plaintiff's motion is denied, and Defendant's motion is granted.

**PROCEDURAL BACKGROUND**

On February 24, 2012, Plaintiff protectively filed for SSI, alleging disability beginning December 26, 2011. (T.164-71).[1] The

---

[1] Citations to "T." in parentheses refer to pages in the certified transcript of the administrative record.

claim was initially denied on April 27, 2012, and Plaintiff timely requested a hearing. (T.83). A video hearing was conducted on September 3, 2013, by Administrative Law Judge Susan Wakshul. (T.31-64). Plaintiff was represented by her attorney and testified. A vocational expert testified by phone. ALJ Wakshul issued an unfavorable decision on October 25, 2013. (T.14-30). The Appeals Council denied Plaintiff's request for review on February 19, 2015, making ALJ Wakshul's decision the final decision of the Commissioner. (T. 1-6).

On April 17, 2015, Plaintiff filed an appeal of the Commissioner's decision in this Court. The parties stipulated to remanding the case for further proceedings and, on March 2, 2016, an order to that effect was filed by the Court (Payson, M.J.). (T. 726-54). On April 13, 2016, the Appeals Council issued an order vacating ALJ Wakshul's decision and directing her to obtain additional evidence concerning Plaintiff's impairments; give further consideration to Plaintiff's residual functional capacity ("RFC") during the entire period at issue; and, if warranted, obtain vocational expert testimony.

The matter was reassigned to Administrative Law Judge Connor O'Brien ("the ALJ"), who conducted a hearing on September 12, 2016, in Rochester, New York. Plaintiff appeared with her attorney and testified. Dawn Blythe, an impartial vocational expert ("the VE") also testified.

The ALJ issued a partially favorable decision on July 5, 2017, finding that Plaintiff was disabled as of May 9, 2014. (T.543-67). Applying the five-step sequential evaluation, 20 C.F.R. § 416.920(a), the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found Plaintiff had the severe impairments of degenerative disc disease in lumbar spine and cervical spine, and myofascial pain. (T.623). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment.

Before proceeding to step four, the ALJ found that prior to May 9, 2014, Plaintiff had the RFC to perform a range light work as defined in 20 C.F.R. § 416.967(b) with certain restrictions, including that she could only lift and carry 10 pounds occasionally; could only sit, stand, and/or walk for four hours each, sitting for only one hour at a time and walking for only two hours at a time, after which she needed to change position for at least five minutes; could only occasionally stoop, kneel, and crawl; could only occasionally reach overhead bilaterally and push and pull at the sedentary level; could frequently, as opposed to constantly, reach in other directions with her right dominant arm and only occasionally with her left arm; and would require up to three additional, short, less than five minutes, unscheduled breaks beyond normal scheduled breaks.

At step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as a home attendant, a child monitor or a personal attendant. At step five, the ALJ found that prior to May 9, 2014, Plaintiff could perform the requirements of represetive occupations such as order clerk (Dictionary of Occupational Titles ("DOT") No. 209.567-014, unskilled, sedentary), call out operator (DOT No. 237.367-014, unskilled, light), and counter clerk (DOT No. 249.366-010, unskilled, light), with 185,890; 41,880; and 437,610 positions, respectively, in the national economy. Accordingly, the ALJ entered a finding of not disabled.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (stating that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential

standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

**I. The ALJ's Determination Regarding the Disability Onset Date**

Plaintiff's primary challenge to the Commissioner's decision is that the ALJ erred in arriving at her disability onset date. According to Plaintiff, she became disabled as of her first motor vehicle accident on December 26, 2011. The ALJ concluded, however, that Plaintiff's limitations did not become disabling until after her second motor vehicle accident on May 9, 2014, which exacerbated her condition. In support of this contention, Plaintiff asserts two arguments. First, Plaintiff argues that the ALJ misapplied Titles II & XVI: Onset of Disability, Social Security Ruling ("SSR") 83-20, 1983 WL 31249 (S.S.A. 1983). Second, Plaintiff asserts that the ALJ erroneously weighed the opinions and RFC assessments provided by treating physician Dr. John McGuire; treating physician's assistant Jennifer Samuels, RPC-C ("PA Samuels"); and independent medical examiner ("IME") Dr. Elias Nicolas.

**A. Misapplication of SSR 83-20**

SSR 83-20 instructs ALJs how to determine a disability onset date in circumstances where that date needs to be inferred. SSR 83-20, 1983 WL 31249, at *1. An SSR is "binding on all components

of the Social Security Administration . . . ." <u>Heckler v. Edwards</u>, 465 U.S. 870, 873 n.3 (1984) (quotation omitted).

Under SSR 83-20, to determine an appropriate onset date in a case that involves a disability with a sudden or traumatic origin, "onset is the day of the injury if the individual . . . is expected to be unable to engage in substantial gainful activity (SGA) (or gainful activity) for a continuous period of at least 12 months . . . ." 1983 WL 31249, at *2 (citation omitted). On the other hand, "in disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity[,]" with "[t]he weight to be given any of the relevant evidence depend[ent] on the individual case." <u>Id.</u>

In her brief, Plaintiff presents arguments based on the factors applicable to determining the onset date in a case involving a disability of nontraumatic origin. These factors are not relevant to a case that involves a disability of traumatic origin. Plaintiff's case involves two traumas—the first motor vehicle accident in December 26, 2011, and the second motor vehicle accident on May 9, 2014. Plaintiff's argument regarding the proper onset date thus is more appropriately viewed as a challenge to ALJ's RFC determination for the period from December 26, 2011, to May 9, 2014, the date on which she was found disabled.

**B. RFC Unsupported by Substantial Evidence Due to Erroneous Weighing of Medical Opinions**

  **1. Treating Physician Dr. McGuire**

On August 13, 2013, Dr. McGuire, Plaintiff's primary care physician, completed a disability statement. (T.526). He listed her diagnoses as low back pain/cervicalgia and opined that she had been disabled since January 1, 2012, and it was unknown when she would be able to return to work. Dr. McGuire subsequently completed disability statements in identical fashion on October 15, 2013 (T.567); December 5, 2013 (T.576); January 6, 2014 (T.585); February 6, 2014 (T.592); and March 20, 2014 (T.597); and May 15, 2014 (T.607).

At the time relevant to this appeal, the Commissioner "recognized a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." Green-Younger, 335 F.3d at 106. The applicable regulations advised claimants that "a treating source's opinion on the issue(s) of the *nature and severity* of your impairment(s)" will be given "controlling weight" if the opinion is "*well supported* by medically acceptable clinical and laboratory diagnostic techniques and is *not inconsistent* with the other substantial evidence in your case record." 20 C.F.R. § 416.927(d)(2) (emphases added). However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

The ALJ first found that Dr. McGuire's statements that Plaintiff had been disabled since January 1, 2012, were not entitled to any particular weight. (T.625 (citations omitted)). With regard to the remainder of the statements, the ALJ explained that they were not supported by narrative explanation and did not provide specific limitations. (T.625). This is generally a proper factor for an ALJ to consider. See 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). However, the form appeared to be related to a Worker's Compensation or other insurance claim, and requested only cursory responses from Dr. McGuire. Dr. McGuire offered nothing more than a date upon which Plaintiff was unable to work because that is all the form asked of him. Therefore, on the facts presented in this case, the Court finds that it would be unfair to draw an adverse inference against Plaintiff based on the absence of any specific limitations in Dr. McGuire's statements. See, e.g., Ubiles v. Astrue, No. 11-CV-6340T MAT, 2012 WL 2572772, at *9 (W.D.N.Y. July 2, 2012) ("[I]t is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking [disability] benefits.").

The ALJ also found that Dr. McGuire's contemporaneous treatment notes did not support his opinion rendered in January of

2012, as to Plaintiff's degree of disability. The ALJ described Dr. McGuire's treatment note from February 10, 2012, as reflecting improvement in Plaintiff's condition. (T.625). The ALJ noted that Plaintiff "reported that her upper back was feeling better, but she continued to have pain in her left hip and groin, although she was still in physical therapy; and objective observation revealed she had a slow, normal gait, able to ambulate without difficulty; she was in no acute distress, and was pleasant and interactive." (T.625 (citation omitted)). However, the ALJ omitted Plaintiff's complaints, made at that appointment, that physical therapy was not helping enough to ameliorate her left hip and groin pain, and she was unable to sit for long times and needed to change positions frequently. (T.277). Citation to this portion of one treatment note from Dr. McGuire's office mischaracterizes Plaintiff's progress. Less than a month later, on March 5, 2012, Plaintiff underwent an MRI that revealed significantly abnormal lumbar spine findings. (T.312-14). Despite attending physical therapy, undergoing lumbar transforaminal epidural injections, and taking pain medication, Plaintiff continued to have low back pain, which caused difficulty sitting and staying in one position. (T.384, 408-409, 467). Plaintiff underwent L4-L5 decompressive surgery, facetectomy, and foraminotomies on September 26, 2012 (T.454, 497), but her lower back and neck pain persisted. Plaintiff then treated with pain management specialist Jennifer Gargano, M.D., undergoing multiple rounds of trigger point injections and sacroiliac joint injections

as well as continuing to take muscle relaxers and pain medication. (T.520-23, 528-29, 532, 582, 594, 602-604).

### 2. PA Samuels

On March 14, 2012, PA Samuels, who was part of Dr. McGuire's practice, completed an RFC questionnaire (T.350-54), noting that she had treated Plaintiff since January 9, 2012, for lower back pain and left groin pain. Plaintiff's symptoms included lower back pain and left hip pain aggravated by sitting, bending forward, and lifting. PA Samuels cited to the March 5, 2012 MRI findings of disc herniations at L4-5 and L5-S1 with spinal stenosis, as well as clinical findings including left low back pain with back flexion and tenderness over the left sacral sulcus. PA Samuels opined that Plaintiff's experience of pain and other symptoms were severe enough to frequently (defined as "34% to 66% of an 8-hour workday") interfere with attention and concentration needed to perform even simple work. She opined that Plaintiff could sit for 15 minutes at a time; stand for 45 minutes at one time; sit for a total of less than 2 hours in an 8-hour workday; occasionally lift and carry less than 10 pounds; frequently look down, turn her head right or left, look up, or hold her head in a static position; and rarely twist, stoop (bend), crouch/squat, climb ladders, and climb stairs. She also opined that Plaintiff required periods of walking around every 15 minutes of an 8-hour workday for 10 minutes at a time and an at-will sit/stand/walk option, as well as 10-minute long unscheduled breaks every 1 to 2 hours.

The ALJ at one point stated that PA Samuels' opinion was entitled to "significant weight," notwithstanding that she is not an acceptable medical source under the regulations, yet ALJ twice stated she was only according "some weight" to PA Samuels' opinions. (T.626). The ALJ asserted that "some aspects of the opinion are internally inconsistent" and provided one example, when PA Samuels stated that "the claimant is capable of performing a high stress job, but she also stated that the claimant's impairments would frequently interfere with her attention and concentration." (T.626). Accepting <u>arguendo</u> the ALJ's conclusion that this was an inconsistency, it does not undermine the validity of the *physical* limitations contained in PA Samuels' RFC questionnaire. The ALJ further discounted PA Samuels' opinion because it was provided within six months of the first motor vehicle accident, and "treatment" did "not reflect the degree of injury that would support the more significant limitations" based on what amounts to the ALJ's extremely selective parsing of the results of Plaintiff's January 13, 2012 imaging studies. "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [s]he cannot simply selectively choose evidence in the record that supports his conclusions." <u>Gecevic v. Sec'y of Health and Human Servs.</u>, 882 F. Supp. 278, 286 (E.D.N.Y.1995) (quoting <u>Fiorella v. Heckler</u>, 725 F.2d 174, 176 (2d Cir. 1983)) (citations omitted). Moreover, Plaintiff's course of treatment can hardly be characterized as conservative or

-11-

minimal. As noted above, physical therapy and pain medication were insufficient to alleviate Plaintiff's pain, and she proceeded to treat with a pain management specialist and receive epidural and trigger point injections, and eventually underwent lumbar spine surgery when the non-surgical interventions failed. See, e.g., King v. Colvin, No. 6:15-CV-06137(MAT), 2016 WL 1398987, at *3 (W.D.N.Y. Apr. 11, 2016) (finding that a therapist's treatment note, "purportedly representative of a 'steady trend of improvement,' was merely thirty minutes of treatment during the three-year relevant period").

### 3. Dr. Nicolas

On April 26, 2013, Plaintiff underwent an independent medical evaluation by Dr. Nicolas, who noted that he had previously evaluated Plaintiff on July 17, 2012, and he had documented her history at that time, which included complaints of back pain, findings of some degenerative changes and mild bulging disc. She had been treated with trigger point injections and epidural injections, and medications of gabapentin, Tramadol, ibuprofen, and Lidoderm patches. Dr. Nicolas noted that his impression at that time was lumbosacral strain with sciatica. He thought she had a moderate disability. (T.497). He recommended additional injections in the sacroiliac area and continued physical therapy and use of Lidoderm patches. Dr. Nicolas noted that since the prior evaluation, Plaintiff had undergone lumbar decompression surgery which had helped somewhat, but she was still complaining of neck

and lower back pain. (T.497). He noted he had an opportunity to review Plaintiff's medical records and imaging results. On examination, Dr. Nicolas observed that Plaintiff had painful and limited range of motion of the lower back, and his impressions were status post-lumbar laminectomy decompression L4-S1 and ongoing left shoulder and neck pain. (T.498). Dr. Nicolas opined that Plaintiff was markedly disabled and could only do a sitting job with a 5-pound lifting requirement. (T.499). He also opined that if a job had a 5-pound lifting requirement, she could work part-time, 4 days a week, for a maximum of 20 hours a week, pending further treatment. (T.499). He recommended more injection therapy and continued pain management. (Tr. 499).

The ALJ accorded only "some weight" to Dr. Nicolas' opinion because the record and his report did not support his overall opinion that Plaintiff had a "marked" disability and he failed to explain why he no longer believed she had a "moderate" disability. (T.627). This rationale was based on the ALJ's selective reading of Dr. Nicolas' report, which clearly notes that Plaintiff's symptoms had persisted since his prior examination and required her to undergo lumbar spine surgery. (T.497). Dr. Nicolas' observation is consistent with Plaintiff's longitudinal medical record and indicated that he had reviewed her medical records before forming his opinion. The Court therefore concludes that the ALJ here improperly substituted her layperson's opinion over that of an acceptable medical source. See, e.g., Goldthrite v. Astrue, 535 F.

Supp.2d. 329, 339 (W.D.N.Y. 2008) ("[A]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion.") (citations omitted).

Defendant contends that ALJ gave weight to the the functional abilities evaluation performed by occupational therapist John C. Hartman, OTR/L ("OT Hartman"), on April 11, 2014, which allegedly supports the pre-May 9, 2014 RFC. The ALJ accorded "weight" to OT Hartman's opinion; however, the ALJ did not explain how much "weight" was given to it, leaving that to speculation. (T.629). Furthermore, in a very significant respect, OT Hartman's report is not supportive of the pre-May 9, 2014 RFC for a range of light work, since OT Hartman stated that Plaintiff was limited to, inter alia, performing only sedentary work and lifting up to 10 pounds. Thus, it is apparent that the ALJ did not rely on the "other source" opinion from OT Hartman to justify the discounting Dr. McGuire's, PA Samuels', and Dr. Nicolas' opinions. See Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (unpublished opn.) ("[W]hen a medical opinion stands uncontradicted, '[a] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome' it.") (quoting Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (internal quotation marks omitted; brackets in original; other citations omitted); further citations omitted)).

**II. Remedy**

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. As discussed above, the ALJ committed several factual and legal errors in weighing the record evidence and the opinions provided by Dr. McGuire and PA Samuels, who had treated Plaintiff; and Dr. Nicolas, who examined Plaintiff on two occasions and reviewed her records.

The standard for directing a remand for calculation of benefits is met where the record persuasively demonstrates the claimant's disability, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, Butts v. Barnhart, 388 F.3d 377, 385–86 (2d Cir. 2004). The record reveals that Plaintiff has already had two administrative hearings, and there are multiple functional assessments by medical sources who actually treated or examined Plaintiff. Upon reviewing the record in its entirety, the Court finds that had the opinions referenced above been accorded their proper weight, a finding of disability is compelled. Accordingly, the Court concludes that the proper remedy is to reverse the Commissioner's decision and remand for the calculation and payment of benefits.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision was legally erroneous and is not supported by substantial evidence. It therefore is reversed. Accordingly, Defendant's motion for judgment on the pleadings is denied, Plaintiff's motion for judgment on the pleadings is granted, and the case is remanded solely for the calculation and payment of benefits. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: October 29, 2018
Rochester, New York.